Tivie **DIETRICH, individually, and all other similarly situated employees, Plaintiff,**

v.

**LIBERTY SQUARE, L.L.C., and American Healthcare Management Services, L.L.C., Defendant.**

**No. C05–2037.**

United States District Court, N.D. Iowa, Eastern Division.

Aug. 29, 2005.

---

**152.** Charles Silver, *"We're Scared to Death": Class Certification and Blackmail*, 78 N.Y.U. L.Rev. 1357, 1429–1430 (2003).

Mark D. Sherinian, Jill M. Zwagerman, Sherinian & Walker, PC, West Des Moines, IA, for Plaintiff.

Stephanie Lynn Marett, Mary E. Funk, Nyemaster, Goode, Voigts, West, Hansell & O'Brien, P.C., Des Moines, IA, for Defendant.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to the plaintiffs' June 10, 2005 motion for leave to notify potential plaintiffs of action[1]

---

1. The plaintiffs also filed a motion for leave to file a supplemental motion to notify potential

and motion compelling discovery (within docket number 16)[2]. For the reasons set forth below, the plaintiffs' motion for leave to notify potential plaintiffs of action (docket number 16) is granted as set forth in this Order, the plaintiffs' motion for leave to file a supplemental motion to notify potential plaintiffs (docket number 27) is granted, and the plaintiffs' motion to compel discovery (within docket number 16) is granted as set forth in this Order.

### Procedural Background

Plaintiff Tivie Dietrich, commenced an action on March 8, 2005, in the Iowa District Court for Floyd County, on behalf of herself and all other similarly situated employees who were allegedly denied overtime wages in violation of the Fair Labor Standards Act (FLSA) under 29 U.S.C. § 201 et seq. and the Iowa Wage Payment Collection Act pursuant to Iowa Code Chapter 91A. The defendants, Liberty Square, LLC, and American Healthcare Management Services (AHMS), LLC, filed a notice of removal to this court on March 31, 2005. Defendant AHMS filed a motion to dismiss on April 15, 2005, asserting that the plaintiffs had failed to state a claim against AHMS because AHMS is not the plaintiffs' "employer" as that term is construed under both the FLSA and the Iowa Wage Payment Collection Act. Defendant AHMS's motion to dismiss has not been ruled on as of the date of this Order. By Order dated June 15, 2005, the court granted the plaintiffs' motion to amend or correct the Complaint to add Andrew Burgin as a plaintiff in this matter (docket number 18).

### Plaintiffs' Motion to Notify Potential Plaintiffs

29 U.S.C. § 216(b) provides, in relevant part, as follows:

> No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such

consent is filed in the court in which such action is brought.

■ "[D]istrict courts have discretion, 'in appropriate cases,' to facilitate notice to potential plaintiffs." *Campbell v. Amana Company, L.P.,* 2001 WL 34152094 at *2 (N.D.Iowa Jan. 4, 2001) (citing *Hoffmann–La Roche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)); *see also Brooks v. BellSouth Telecommunications, Inc.,* 164 F.R.D. 561, 570 (N.D.Ala.1995) (stating that *Hoffmann–La Roche Inc.* "found that district courts have the authority to permit the discovery of the names and addresses of potential class members."). The Supreme Court, in *Hoffmann–La Roche Inc.,* held that the class action mechanism set forth in 29 U.S.C. § 216(b):

> must grant the court the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure. It follows that, once [a FLSA] claim is filed, the court has a managerial responsibility to oversee the joinder of additional parties to assure the task is accomplished in an efficient and proper way.

*Campbell,* 2001 WL 34152094 at *2 (citing *Hoffmann–La Roche Inc.,* 493 U.S. at 170–71, 110 S.Ct. 482 (internal citations omitted)). By the court's monitoring the preparation and distribution of the notice to potential plaintiffs, the court "can ensure that it is timely, accurate, and informative." *Id.* (citing *Hoffmann–La Roche Inc.,* 493 U.S. at 172, 110 S.Ct. 482). "Both the parties and the court benefit from settling disputes about the content of the notice before it is distributed" to potential plaintiffs. *Id.*

■ Both 29 U.S.C. § 216(b) and its precedent are "largely silent as to how the class

---

plaintiffs on July 1, 2005 (docket number 27). The defendants assert that the plaintiffs filed this "supplemental motion," rather than filing a reply to the defendants' resistance, in an attempt to cure the fact that the plaintiffs failed to file a brief in support of the plaintiffs' initial motion to notify potential plaintiffs (docket number 16), as required by Local Rule 7.1(d). The court grants the plaintiffs' motion for leave to file (docket number 27).

**2.** Although the plaintiffs do not specifically bring a motion to compel discovery, the court finds both that the plaintiffs have substantively brought such a motion within the plaintiffs' motion to notify potential plaintiffs (docket number 16), and that such motion has been properly resisted by the defendants.

certification issue should be analyzed." *Id.* (citing *Hoffmann–La Roche Inc.,* 493 U.S. at 170). "A two-tiered analysis distinguishes between conditional class certification, generally made at the 'notice stage,' and a final class certification determination made after discovery is largely completed." *Id.* (citing *Thiessen v. General Elec. Capital Corp.,* 996 F.Supp. 1071, 1080 (D.Kan.1998)). Because the initial stage of conditional certification is "based on little or no discovery, the 'burden on plaintiffs is not a stringent one.'" *Id.* (quoting *Hoffmann v. Sbarro, Inc.,* 982 F.Supp. 249, 261 (S.D.N.Y.1997)). Accordingly, "conditional certification of a representative class is generally granted." *Id.* (citing *Thiessen,* 996 F.Supp. at 1080). To establish that conditional certification is appropriate, the plaintiffs "need merely provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Id.* (quoting *Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995)). "Courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs were victims of a common policy or plan that violated the law." *Id.* (citing *Hoffmann,* 982 F.Supp. at 261; accord *Jackson,* 163 F.R.D. at 432). "The more stringent factual inquiry as to whether the plaintiffs are 'similarly situated' is made only after a more substantial record has been amassed." *Id.* (citing *Id.*).

The plaintiffs move for conditional certification and permission to notify potential plaintiffs of their pending FLSA claim against the defendants, thereby enabling potential plaintiffs to "opt in" to the law suit as required by 29 U.S.C. § 216(b). In support of the plaintiffs' motion to notify potential plaintiffs, the plaintiffs allege the following:

(1) Hourly employees were often forced to work off the clock at the [defendants'] Liberty Square location.

(2) Hourly employees were also told that if they worked in a department at Liberty Square, other than the one to which they were assigned, they would not be eligible for overtime.

(3) Hourly employees were also required to work in other buildings besides the Liberty Square facility. However, they were told that because it was a different building they would not be eligible for overtime wages.

(4) Hourly employees were also told that because of the date the pay period started or ended, they were not entitled to overtime.

(5) Many hourly employees were forced to clock out at their scheduled time, but continue to work until all of their duties were finished.

(6) Some salaried employees were misclassified as exempt employees when in fact they were hourly employees and not paid overtime.

In support of these allegations, the plaintiffs have provided the affidavits of Plaintiff Andrew Burgin and Plaintiff Tivie Dietrich.[3] Mr. Burgin's affidavit states, in relevant part, as follows:

I began my employment with [the defendants] in April 2002, in the maintenance department. My title is and has been Maintenance Supervisor and Driver. I was a salaried employee ... I was contracted to work 43 hours a week, but generally worked at least 50 hours a week. I was on call 24 hours a day, including weekends, and never compensated for the additional days I was required to come into work .... [The defendants] classified me as an administrative employee, but I never supervised any employees or had administrative duties. In fact, on approximately May 3, 2005, Linda Weaver told me I was incorrectly classified as an administrative employee and from then on would be considered an hourly wage employee .... I do believe there may be additional employees who are in the same position that I am in who were denied overtime benefits because they were misclassified as salaried employees.

---

**3.** The plaintiffs initially submitted an unsigned, unsworn statement by Tivie Dietrich, to which the defendants objected. The plaintiffs explained that Ms. Dietrich was on bed rest due to complications associated with her pregnancy, and that as soon as she was able, she would provide a signed and sworn affidavit. The plaintiffs subsequently filed Ms. Dietrich's signed and sworn affidavit on July 19, 2005 (docket number 30).

Ms. Dietrich's affidavit provides, in relevant part:

I began my employment with [the defendants] in February 2004, as an aide .... I was moved to housekeeping in March 2004, until August of that year when I became the Activities Director at the facility. I resigned in April 2005. I was always paid as an hourly employee in all three positions. My duties varied on a daily basis, and I often was responsible for helping out in other departments .... In order for the facility to run smoothly, many employees were required to work in departments other than the one to which they were assigned. Whenever I worked in another department, I was told that because it was not my 'assigned' department, I was not eligible for overtime. I frequently worked over 40 hours a week between two departments and was not paid overtime for the hours over 40. I was told on several occasions that I had to 'punch out,' even though I was not finished with my work. Ron Walls, my Administrator, told me that I had to clock out at my shift ending time, and then finish my duties before going home for the day. I know that these same instructions, were given to other employees as well. Additionally, some of the other employees confided in me that they were not paid overtime when they worked in other departments or even other buildings .... Whenever employees were assigned to work at the other buildings, they were not given overtime compensation for their time worked over 40 hours.

Based upon these allegations and supporting affidavits, the plaintiffs request court authorization to notify other potential plaintiffs about the pending action by way of mailing a letter and consent form.

The defendants resist conditional certification for notification and discovery purposes, arguing that the plaintiffs have failed to set forth "substantial allegations" that the potential plaintiffs "were together the victims of a single decision, policy, or plan."[4] The defendants assert that although the plaintiffs' burden at the conditional certification stage is less stringent than the standard which the court would apply at the later decertification stage, the plaintiffs nevertheless have failed to satisfy their burden for conditional certification. Specifically, the defendants argue that the plaintiffs have failed to assert "substantial allegations" for conditional certification because (1) the plaintiffs' "assertions that 'salaried employees were misclassified as exempt employees when in fact they were hourly employees' suggests that all Liberty Square employees are similarly situated no matter what the nature of their duties, simply because they claim violations of the same law by the same employer"; (2) the two named plaintiffs, Ms. Dietrich and Mr. Burgin, hold positions that are not "similarly situated" with other employees of the defendants as the plaintiffs have "failed to demonstrate that their actual job duties are similar to those of the putative class consisting of a wide variety of positions"; (3) when the nature of an employee's job duties are at issue,[5] as in this case, the court "cannot conclude that [the plaintiffs] are similarly situated to all employees [of the defendants] and/or that all claims have common questions of fact and are typical of one another"; (4) given the nature of the plaintiffs' allegations in this case, the defendants anticipate that defending the matter will require "individualized evidence concerning each employee or former employee" and that such "[d]isparate individual defenses heighten the individuality of the claims, and provide for denying conditional certification"; and (5) before allowing for conditional certification of the plaintiffs' action, the court should conduct a preliminary inquiry to determine "whether a manageable class exists" because by granting the plaintiffs' motion, the court is in effect expanding the scope of this litigation.

■ The plaintiffs' motion for leave to notify potential plaintiffs of this action is granted. The court finds that the plaintiffs have satisfied the minimal burden necessary for

---

4. The defendants cite *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.2001) for the proposition that the appropriate conditional certification standard requires the plaintiff to set forth "substantial allegations."

5. The defendants argue that there is a wide range of job duties and job titles held by employees of the defendants and that the plaintiffs have set forth no evidence that the potential plaintiffs are similarly situated to the named plaintiffs.

conditional class certification so as to notify potential class members. Based upon the allegations set forth in the plaintiffs' motion and the two supporting affidavits, the court finds that the plaintiffs have provided "some factual basis from which the court can determine if similarly situated potential plaintiffs exist." *Campbell,* 2001 WL 34152094 at *2 (quoting *Jackson v. New York Tel. Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995)). The defendants' concerns, while valid, are more appropriate for the later decertification stage, after more discovery has taken place.

### Plaintiffs' Proposed Notification and Consent Forms [6]

*Fed.R.Civ.P.* 23(c)(2)(A) provides, "[f]or any class certified under Rule 23(b)(1) or (2), the court may direct appropriate notice to the class." *Fed.R.Civ.P.* 23(c)(2)(B) sets forth the requirements for notice of potential plaintiffs as follows [7]:

For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:

- the nature of the action,
- the definition of the class certified,
- the class claims, issues, or defenses,
- that a class member may enter an appearance through counsel if the member so desires,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

The plaintiffs have attached to their supplemental motion for leave to notify potential plaintiffs a proposed notification letter. The letter explains that counsel for the plaintiffs have been authorized by the United States District Court for the Northern District of Iowa to notify potential plaintiffs, those who are current or former employees of the defendants, that they may be entitled to overtime wages. The letter goes on to explain what the FLSA is and how it works, and sets forth the plaintiffs' theory of recovery. The letter then indicates to potential plaintiffs that in order to benefit from "any ruling that may be entered in this matter," that the FLSA requires that plaintiffs "opt in" to the class by signing a consent form. The letter explains that any potential plaintiffs may choose to take no action, or contact independent counsel to pursue claims independently. The letter further indicates that the potential plaintiff must sign the consent form and return it to counsel for the plaintiffs in order to become a participant, and that any potential plaintiff who chooses to join the action will accordingly be bound by the court's final judgment in this matter. Finally, the letter sets forth the statute of limitations for FLSA claims for the benefit of those plaintiffs who choose not to participate in this action.

The defendants argue that the plaintiffs' proposed notification letter is deficient in both scope and form. Specifically, the defendants assert that the proposed notification letter is inadequate because (1) the letter does not "advise potential plaintiffs of any fees or advances they may be obligated to pay at any stage of the litigation"; (2) the letter does not advise that this action "only deals with (or should only deal with) employees working at Liberty Square in Nora Springs, not employees in any way affiliated with American Healthcare Management Services, L.L.C. (AHMS) or other properties manages by AHMS"; (3) the letter does not advise as to the number of individuals who have already submitted signed consent forms as of the date of the mailing; (4) the letter does not indicate that the court "has expressed no opinion as to the merits of [the plaintiffs'] claims." [8] The defendants further take issue with the scope of recipients of the notification letter. Specifically, the defen-

---

6. The defendants do not object to the plaintiffs' proposed consent form. Accordingly, the court considers only the defendants' arguments in regard to the plaintiffs' proposed notification letter.

7. As discussed more thoroughly in the court's analysis of this issue, *Fed.R.Civ.P.* 23 is not di-

rectly applicable to this case because in an FLSA action, the parties are required to "opt-in" rather than affirmatively opting-out of the lawsuit.

8. In support of the contention that such information is required to be in the notification letter, the defendants cite to *Krueger v. New York Tele-*

dants assert that the plaintiffs request to notify all employees of the defendants should be denied as overbroad. The defendants argue that (1) if the court requires the defendants to provide the plaintiffs with "the names of all employees, particularly current employees [that the defendants have] identified as management, who are most likely exempt [from the FLSA], the [c]ourt would essentially be allowing [the plaintiffs] counsel ex parte communication with [the defendants'] management employees," and such communication would be "unethical"; and (2) if the court orders the defendants to provide information concerning all employees and allows the plaintiffs to send notification to all employees, such notice could encompass employees who are represented by counsel in this matter, thereby violating Rule 32:4.2 of Iowa's Rules of Professional Conduct, which prohibits an attorney from communicating concerning the subject matter of known representation with a party known to be represented by a lawyer in that matter.

 The court finds that while the plaintiffs' notification sufficiently complies with *Fed.R.Civ.P.* 23(c)(2)(B), Rule 23(c)(2)(B) is not directly applicable to this case because this case is an action brought pursuant to the FLSA. Actions under the FLSA, like those under the ADEA, require that plaintiffs "opt-in" to the lawsuit, rather than the usual scenario in which plaintiffs must affirmatively "opt-out" of the lawsuit. *Krueger*, 1993 WL 276058 at *3 n. 2. Accordingly, the *Krueger* case, cited by the defendants, is appropriately considered by this court in determining the sufficiency of the plaintiffs' proposed notification because the *Krueger* case concerned an ADEA claim which, as in the instant case, required that the potential plaintiffs "opt-in" rather than "opt-out" of the lawsuit. Considering those factors deemed necessary by the *Krueger* court for proper notification, the court finds that the plaintiffs should revise the plaintiffs' notification letter to include the following additional factors and language:

(1) any fees or advances that a plaintiff would be obligated to pay at any stage of the litigation;

*phone Co.*, 1993 WL 276058 (S.D.N.Y. July 21, 1993).

(2) that the court has expressed no opinion as to the merits of the plaintiffs' FLSA claims.

(3) The first paragraph of the plaintiffs' notification letter shall be amended to read as follows: "We have been authorized by the United States District Court for the Northern District of Iowa to notify you, as a current or former employee of Liberty Square, L.L.C. (Liberty Square), Nora Springs location, and American Healthcare Management Services, L.L.C. (American Healthcare), that we have brought an action seeking overtime wages from Liberty Square and you may join it. The court has expressed no opinion on the merits of the case."

### Plaintiffs' Motion to Compel Discovery

The plaintiffs served the following Interrogatory to the defendants on May 25, 2005: INTERROGATORY NO. 1. State the name, birthdate, position, dates of employment, telephone number, and last known address of each and every hourly employee who has worked for Liberty Square/American Healthcare Management Services, L.L.C. at the Nora Springs locations since January 1, 2002.

On June 9, 2005, the defendants notified the plaintiffs by letter that they would not respond to the Interrogatory request until after a *Fed.R.Civ.P.* 26(f) conference had been held. The parties held a *Fed.R.Civ.P.* 26(f) conference and entered into a scheduling order and discovery plan on June 13, 2005. The plaintiffs served a second Interrogatory to the defendants on July 5, 2005, asking for the same kind of information sought in Interrogatory No. 1, but pertaining to non-hourly, salaried employees.

The plaintiffs request that "[b]ecause the statute of limitations is running for each potential claimant, under the [FLSA], [the plaintiffs move] that the [c]ourt order the [d]efendants provide the information requested [in the plaintiffs' first] Interrogatory . . . within 10 days of this motion." [9]

9. The plaintiffs' motion was filed June 10, 2005.

The defendants resist, arguing that "the date [that] the [c]ourt approved the proposed scheduling order, June 13, 2005, should be the date on which the 30–day discovery clock started ticking, making [the defendants'] response not due until at least July 13, 2005." The defendants further raise two substantive objections to the plaintiffs' first Interrogatory.[10] First, the defendants argue that the requested information concerning the employees' birthdates is "wholly irrelevant" as the plaintiffs have "not asserted an age discrimination claim." Second, the defendants argue that the plaintiffs' first Interrogatory "arguably requests information for employees AHMS," which is improper because "AHMS was not [the plaintiffs'] employer and is not the employer of any Liberty Square employee who works at Liberty Square's Nora Springs location."

 The plaintiffs' motion to compel that information requested in the plaintiffs' first Interrogatory is granted. First, the defendants' objection to identifying employees' birthdates is without merit. Relevance, per se, is not the applicable test for discovery. Pursuant to *Fed.R.Civ.P.* 26(b)(1), parties may obtain information that may not be admissible at trial so long as that information appears reasonably calculated to lead to the discovery of admissible evidence. Further, the defendants have neither indicated nor established that any of the concerns set forth in *Fed.R.Civ.P.* 26(b)(2) and which would support the court placing limitations on the requested discovery, are here present. In complying with the court's order compelling this discovery, however, the defendants should identify by position those salaried managerial employees for whom the defendants claim representation of in this matter, so as to provide notice to the plaintiffs of those employees for whom contact from plaintiffs' counsel would implicate Rule 32:4.2 of Iowa's Rules of Professional Conduct. In so doing, the defendants are cautioned against any wholesale assertions that somehow every salaried employee is a managerial employee for whom the defendants are providing representation in this matter. Finally, the court finds that the record is not developed such that this court can determine, based on nothing more than the defendants' assertions, that AHMS is not a proper party to this lawsuit and that information concerning AHMS is therefore not discoverable.[11]

Upon the foregoing,

IT IS ORDERED that the plaintiffs' motion for leave to notify potential plaintiffs of action (docket number 16) is granted as set forth in the body of this Order. The plaintiffs' motion for leave to file supplemental motion to notify potential plaintiffs (docket number 27) is likewise granted. The plaintiffs' motion to compel discovery in regard to responses to the plaintiffs' first and second Interrogatories (within docket number 16) is granted. The defendants, in complying with this Order compelling discovery, shall timely identify for the plaintiffs, by position, those salaried employees for whom the defendants claim representation of in this matter.

---

10. The defendants concede that a response to the plaintiffs' second Interrogatory would be due on August 5, 2005, but object to the substance of the second Interrogatory on the same grounds as those concerning the first Interrogatory. The court's ruling concerning the defendants' objections to the substance of the plaintiffs' first Interrogatory is therefore equally applicable to the defendants' objections to the plaintiffs' second Interrogatory.

11. As of the date of this Order, the court, Hon. Edward J. McManus, Senior District Court Judge, United States District Court for the Northern District of Iowa, has not ruled on the defendants' motion to dismiss AMHS from this lawsuit.